IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

KIMBERLY RALEY, )
)
       Plaintiff, )
)
vs. ) Case No. 10-0903-CV-W-ODS
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security. )
)

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her application for disability benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in March 1963. She earned a college degree in safety science and technology and her prior work experience includes work as a laboratory admission/registration clerk for a hospital and a right-of-way agent for a utility company. She last worked as an admission/registration clerk on January 25, 2004, and alleges she became disabled on that date due to a combination of anxiety, irritable bowel syndrome, fibromyalgia, and migraines.

On appeal, Plaintiff focuses on her anxiety, so this will be the Court's starting point. Plaintiff reported anxiety attacks as early as May 2001; at that time, she indicated to her psychiatrist (Dr. Kevin Mays) she had panic attacks for the last twenty-five years and her then-present concern involved flying in an airplane on a planned vacation; her GAF score was 60. R. at 197-99. In May 2002 she expressed a desire to quit working "in the city." R. at 192. In June 2004 (approximately five months after her alleged onset date) Plaintiff told Dr. Mays she felt "ok" but was overwhelmed by having five teenagers

and a baby in the house. R. at 191. In March 2005, while seeing Dr. Angela Phelps for symptoms of fibromyalgia and esophagitis, Plaintiff reported that medication "controls her anxiety quite a bit." R. at 205. In 2006 her husband left her, which increased her anxiety. Dr. Mays altered her medication and by November 2006 she again reported feeling "okay." R. at 262-63. Nonetheless, later that month Dr. Mays wrote a letter on Plaintiff's behalf confirming that she suffered from an anxiety disorder that was exacerbated by stress (including financial uncertainty). R. at 266.

In May 2007, Plaintiff underwent testing for a possible blood disorder. She reported working at florist shop but indicated she was also applying for disability. Plaintiff also reported experiencing chronic stress for more than twenty years but denied feeling depressed. R. at 396-401. Plaintiff continued reporting that she felt "okay" during visits to Dr. Mays, although she felt increased stress due to her parents' deteriorating health. In addition to working at the florist shop, Plaintiff enrolled in a ceramics class, bought a ceramics wheel so she could use it at home, and babysit her grandson. R. at 269-71.

In June 2008, Dr. Mays wrote another letter for Plaintiff. This time, he indicated Plaintiff suffers from "significant physical limitations related to her fibromyalgia as well as recurrent headaches. The patient has irritable bowel syndrome as well." Dr. Mays also indicated Plaintiff could not work a forty-hour week and was unlikely to recover "physically and emotionally" sufficiently to allow her to return to work. R. at 419.

As noted, Plaintiff also alleges she suffers from several physical ailments, but she does not direct the Court to any particular records substantiating her claims of error, leaving the Court to review the Record on its own. Shortly before her alleged onset date, Dr. Kimberley McKeon examined Plaintiff and noted that she had a normal MRI, a normal range of motion, and no neurological or skeletal problems. She advised Plaintiff to undergo physical therapy, but she declined. R. at 210-11. In July 2003, Plaintiff saw Dr. Brent Hoke to address her gastrointestinal problems. Dr. Hoke suspected Plaintiff's problems were caused by antibiotics she was taking; Plaintiff stopped taking the antibiotics and her problems diminished. R. at 220. In February 2005, Plaintiff saw a doctor at Mid-America Gastro-Intestinal Consultants (Dr. Glen Portwood), apparently on

2

referral from her doctor. He diagnosed her as suffering from mild esophagitis and recommended she use Prevacid. R. at 237-38. During the March 2005 visit to Dr. Phelps (mentioned previously), Plaintiff was switched from Prevacid to Nexium and told to return in four weeks. She was also prescribed Cymbalta for pain purportedly related to fibromyalgia. R. at 205. Plaintiff returned two weeks later complaining that Cymbalta had not provided relief; Dr. Phelps increased the dosage. R. at 204. Plaintiff next saw Dr. Phelps in June 2005 for ailments unrelated to her disability claim, and made no complaints regarding either fibromyalgia or esophagitis. R. at 202. In 2007, Plaintiff reported she felt she had "turned [the] corner with respect to fibromyalgia (although she believed she had contracted lupus, which no doctor has confirmed). R. at 279.

During the administrative hearing on Jne 26, 2008, Plaintiff confirmed that she worked at friend's florist shop an average of once a week, and for an average of five hours at a time. R. at 433-34. Her duties consist of folding billing statements and putting them in envelopes and "flower work." R. at 424. She testified she wakes up between 2:30 and 3:30 in the morning because of pain, makes coffee and toast and takes her medication, then tries to nap. She explained that she does not curl her hair anymore because she "can't hold and twist" her hair anymore. Plaintiff acknowledged her doctors had advised her to be active, but she contends any exertion – such as grocery shopping – results in several days of bed rest to recuperate. R. at 426-29. Plaintiff also denied being able to sit or stand for more than fifteen minutes at a time. R. at 425.

The ALJ found Plaintiff's mental impairments did not impose more than a minimal limitation on her ability to work because she had only mild limitations in the areas of daily living, social functioning, and concentration, persistence or pace. R. at 13. The ALJ then summarized the medical evidence; in so doing, he accorded little weight to Dr. Mays' letters because (1) they were inconsistent with Plaintiff's daily activities, (2) they were inconsistent with Dr. Mays' treatment records, and (3) in some respects, they offered opinions regarding conditions that Dr. Mays was not treating. R. at 16. He found Plaintiff's fibromyalgia was stable based on MRI results and Plaintiff's daily activities. R. at 16. He also generally found Plaintiff's testimony not credible because of

inconsistencies between (1) her testimony and (2) her prior statements and medical records. R. at 16. The ALJ concluded Plaintiff retained the residual functional capacity to perform her past work as a right of way agent and a laboratory admission/registration clerk. R. at 16.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A. Evaluation of Plaintiff's Mental Disorders and the Opinions of Dr. Mays

Plaintiff first argues the ALJ erred in failing to defer to Dr. Mays' opinions or to consider the effects of her anxiety. To the contrary, the ALJ considered Plaintiff's anxiety, and based on substantial evidence found that it was not severe. On several occasions Dr. Mays' records reflect that Plaintiff was feeling "okay" or otherwise indicate Plaintiff's anxiety was controlled. Doctors who treated Plaintiff for other ailments also noted Plaintiff did not appear anxious or depressed. During her testimony, Plaintiff did not mention anxiety as a reason for her inability to work. Plaintiff's anxiety existed for many years while Plaintiff was working, and was exacerbated temporarily by events

4

such as financial difficulty and family issues. These facts support the ALJ's conclusions.

Generally speaking, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). Here, Dr. Mays' letters are inconsistent with his own treatment notes. Moreover, the ALJ was entitled to discount Dr. Mays' opinion with respect to ailments he was not treating. "The treating physician rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians." Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991) (citation omitted). Dr. Mays was not treating Plaintiff for fibromyalgia, so his opinion on the matter was not entitled to deference.

### B. Plaintiff's Credibility

Plaintiff challenges the ALJ's factual findings by pointing to her contrary testimony. However, just because Plaintiff testified under oath does not obligate the ALJ to fully credit her testimony. The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the

5

> testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. Current regulations incorporate these considerations, but the Eighth Circuit has declared that the "preferred practice" is to cite Polaski. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007). The ALJ was also entitled to rely on inconsistencies in the Record such as: Plaintiff told doctors she was working at a florist's shop, and she indicated she worked there one to two days a week, R. at 101, yet her testimony greatly minimized this activity; Plaintiff contended she is unable to curl her hair, but she folds paper, stuffs envelopes, and performs "flower work;" Plaintiff reported her activities included caring for her grandchildren, making pottery (including going so far as to acquire a pottery wheel for use at home), and going to pottery classes. These activities are inconsistent with the nature and type of limitations Plaintiff claimed in her testimony. The ALJ was entitled to conclude Plaintiff's statements to doctors and others was more accurate. The ALJ was also entitled to conclude the amount of medical care Plaintiff sought and the reports from doctors indicates Plaintiff's problems are not as severe as she alleged.

### C. Plaintiff's Ability to Return to Former Work

Plaintiff faults the ALJ for concluded she could return to her prior work, given that the ALJ did not elicit testimony from an ALJ. The facts in this Record justify affirming the ALJ's conclusion. Plaintiff supplied information about the demands of her prior jobs. R. at 101-06. Comparing Plaintiff's representations to his findings, the ALJ could properly conclude Plaintiff retained the residual functional capacity to return to her prior work.

### III. CONCLUSION

For these reasons, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: July 6, 2011              UNITED STATES DISTRICT COURT